# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00651-COA

**MICHAEL POWELL**                                                        **APPELLANT**

**v.**

**CLINTON F. MEYER AND JEANETTE**                          **APPELLEES**
**ENGOLIA**

DATE OF JUDGMENT:              01/22/2015
TRIAL JUDGE:                         HON. M. RONALD DOLEAC
COURT FROM WHICH APPEALED:    PEARL RIVER COUNTY CHANCERY
                                     COURT
ATTORNEY FOR APPELLANT:        G. GERALD CRUTHIRD
ATTORNEY FOR APPELLEES:        GAIL D. NICHOLSON
NATURE OF THE CASE:            CIVIL - REAL PROPERTY
TRIAL COURT DISPOSITION:       GRANTED APPELLEES' PETITION TO
                                     QUIET TITLE IN .22 ACRES OF LAND
DISPOSITION:                   AFFIRMED - 10/25/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this appeal, we must determine whether the Pearl River County Chancery Court

properly granted Clinton Meyer and Jeanette Engolia's (collectively Meyer)[1] petition to quiet

title in .22 acres of land.  The chancellor found that Meyer had proved ownership of the land

by adverse possession.  Finding substantial evidence to support the chancellor's decision, we

affirm.

## PROCEDURAL HISTORY

---

[1] Meyer and Engolia are husband and wife.

¶2.     The parties in this case are adjoining landowners.  In 2013, Meyer filed a petition against Michael Powell to quiet and confirm title in .22 acres of land.  The .22 acres is located along the northwest property line of Meyer's property, adjacent to a section of Powell's property.  Powell subsequently filed a counterclaim to quiet and confirm title to his property, which included the .22 acres in dispute.  After a trial, the chancellor found that Meyer proved ownership of the .22 acres by adverse possession.  The chancellor granted Meyer's petition to quiet title in the .22 acres and denied Powell's counterclaim.

¶3.     Powell now appeals, asserting Meyer failed to prove adverse possession by clear and convincing evidence.

### FACTS

¶4.     In 1997, Powell acquired a twenty-five-acre tract of land in Pearl River County, Mississippi.  Powell used the land for mining sand and gravel.  In 2000, Meyer acquired a 2.19-acre tract of land located next to Powell's property.  Meyer's land is surrounded on three sides by Powell's property.  The fourth side of Meyer's property fronts Henry Smith Road.  The .22 acres of land at issue is located along Meyer's northwest property line in the East Half of Section 4, Township 6 South, Range 18 West.  Meyer uses the property as a bed-and-breakfast and a wedding venue.

¶5.     Both parcels of property were originally owned by Henry Smith.  According to Bob Smith, Henry's grandson, the parcel owned by Meyer was the old homestead where his grandfather lived, and it had always been encircled by a fence.  Smith indicated the fence had been built prior to his grandfather's death in 1944.  Henry Smith had divided his property

2

into nine parts, and one of these nine parts was the homestead that Meyer purchased. Smith visited the property after Meyer purchased it and testified that the old fence was still intact. And the area around the fence line was surrounded by undergrowth.

¶6. The record includes five separate surveys of the property dated 1997 (two surveys), 2000, 2012, and 2013. The first 1997 survey, dated May 22, is of Powell's property. Neither buildings nor a fence is indicated on this survey, but the bearings for the northwest boundary line are the same as the other 1997 survey, dated September 8. This second 1997 survey shows a "shed" located on the homestead near the northwest boundary line. The 2000 survey was attached to Meyer's warranty deed and shows a barn located on the homestead in the same spot as the shed. The record is clear that the barn and shed were the same building. This building was inside Meyer's boundary line. The 2000 sale contract states that a condition of Meyer buying the property was "confirmation of property line on old fence line."

¶7. The 2012 survey of Powell's property shows the fence line along the northwest boundary but indicated that this fence line was not the boundary line. The survey does not show the buildings on Meyer's property, but it does indicate a "building encroachment" five feet on Powell's property.

¶8. The 2013 survey indicated that the northwest boundary line between the two properties was inside Meyer's property line, and it ran directly through a building. This building was a pavilion built by Meyer and located where the shed/barn had stood. Meyer referred to the shed/barn as a log cabin, and it was on the property when Meyer purchased

it in 2000.[2] Meyer testified that he originally used the log cabin to store building supplies. Meyer eventually moved the log cabin to another area on his property and began building the pavilion where the log cabin had stood. The 2013 survey also indicated the "remnants of old fence" along the boundary line claimed by Meyer.

¶9.     Meyer contends that at the time he purchased the property in 2000, an old barbed-wire fence was located along the portion of his property that abutted Powell's property. Meyer stated this fence followed his property line. Meyer rebuilt much of the fence after it suffered damage from Hurricane Katrina. Meyer testified that he built the new fence over the old fence line.

¶10.     Meyer testified that he bought sand and gravel from Powell when he built the pavilion, and Powell used his own equipment to transport the sand and gravel onto the disputed property. And at no point did Powell claim Meyer was building on Powell's property. Meyer claims Powell threatened to tear down the pavilion after learning of the location of the property line from the 2013 survey.

¶11.     Shortly after purchasing his property, Meyer offered to buy Powell's land. Powell refused. In 2011, Meyer offered to buy a small section of land outside the disputed boundary line in order to protect the view of his property. Powell refused. Meyer erected a gate on the disputed property approximately eleven years prior to the litigation. Meyer testified that he spoke with Powell and another nearby landowner, Royce Smith, about the gate's location and maintenance out of courtesy.

---

[2] The property listing mentioned that the property contained an "old log cabin."

¶12.    Paula Powell, Michael's wife, testified that she routinely visited Powell's property to help with his sand and gravel business.  Paula claimed there was no fence on the disputed property, but admitted she was unsure of the exact property line due to the undergrowth.  Paula stated that Powell began clearing this area in 2012 in order to build another entrance to his property.  Paula testified that a new fence appeared shortly after Powell cleared the area.

¶13.    Powell testified that Meyer did ask to purchase his property in 2001.  And Meyer asked for permission to cut down a large oak tree located on the property in dispute.  Powell stated Meyer did ask to buy the property outside the disputed boundary line.  Powell also claimed Meyer told him in 2006 that Meyer might have built a column of his fence on Powell's property.

¶14.    Powell testified that he did not object when Meyer began building the pavilion because he wanted to be a good neighbor.  And Powell said Meyer built a fence on the disputed boundary line after Hurricane Katrina.  Powell pulled the fence up, but Meyer put it back.  But Powell stated there was no activity on the disputed property until 2012, and there was no existing fence in the area.  Powell admitted that the 1997 survey did not show any buildings on his property.

¶15.    On rebuttal, Meyer said the new fence Powell saw was built over the old fence that had been damaged by Hurricane Katrina.  And Powell pulled up this fence when Powell began clearing the undergrowth in 2012. Meyer testified that he asked Powell's permission to cut the oak tree down in case the tree fell onto Powell's property, but was clear that the

5

oak tree was on his property. When building the pavilion, Meyer stated that he relied upon the 2000 survey to make sure the pavilion would be on his property.

## STANDARD OF REVIEW

¶16. This Court employs a limited standard of review when reviewing the decisions of a chancellor. *Pulliam v. Bowen*, 54 So. 3d 331, 334 (¶10) (Miss. Ct. App. 2011) (citation omitted). "The chancellor's determinations will only be reversed when they were manifestly wrong, clearly erroneous, or when the chancellor applie[d] an incorrect legal standard." *Id*. Generally, a finding that proof was sufficient to sustain an adverse-possession claim is a finding of fact and requires the application of the substantial-evidence/manifest-error rule. *Id*. (citing *Walker v. Murphree*, 722 So. 2d 1277, 1280 (¶15) (Miss. 1998)).

## DISCUSSION

¶17. Although Powell lists several issues on appeal, they all relate to whether the chancellor abused his discretion in finding Meyer proved adverse possession.

¶18. Mississippi Code Annotated section 15-1-13(1) (Rev. 2012) defines adverse possession as follows:

> Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full complete title . . . .

We apply a six-part test for determining whether adverse possession has occurred: "for possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5)

6

exclusive; and (6) peaceful." *Walker*, 722 So. 2d at 1281 (¶16). The burden was on Meyer to prove each element by clear and convincing evidence. *Ellison v. Meek*, 820 So. 2d 730, 734 (¶13) (Miss. Ct. App. 2002).

¶19. On appeal, Powell argues that Meyer did not prove three of these elements, specifically two, three, and four. In regard to the actual or hostile element, "[t]he actual or hostile occupation of land necessary to constitute adverse possession requires a corporeal occupation, accompanied by a manifest intention to hold and continue to hold the property against the claim of all other persons, and adverse to the rights of the true owner." *Hill v. Johnson*, 27 So. 3d 426, 431 (¶23) (Miss. Ct. App. 2009). Possession is hostile when the adverse possessor intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is within the calls of the possessor's deed. *Alexander v. Hyland*, 214 Miss. 348, 357, 58 So. 2d 826, 829 (1952). Powell claims he was unaware the fence existed; thus, Meyer could not rely on its existence to establish his claim of ownership. "[T]he mere existence of a fence," without more, "does not establish that the fence is the accepted boundary between the properties." *Ellison*, 820 So. 2d at 735 (¶16). However, there was additional evidence proving that, beginning in 2000, Meyer was the only person who utilized the disputed property—namely, because he mistakenly believed he owned the property. After buying the property, Meyer began to use the log cabin to store equipment before moving it and building a pavilion where the log cabin once stood. Powell conceded that he knew Meyer was "always building" on this piece of property, even selling sand and materials to assist Meyer in constructing the pavilion and a gazebo on the property.

7

¶20.    In regard to the open, notorious, and visible element, "[t]he mere possession of land is not sufficient to satisfy the requirement that the adverse possessor's use be open, notorious, and visible." *Webb v. Drewrey*, 4 So. 3d 1078, 1083 (¶19) (Miss. Ct. App. 2009) (citation omitted). An adverse-possession claim will not begin "unless the landowner has actual or constructive knowledge that there is an adverse claim against his property." *Id*. As previously stated, Powell conceded that he knew Meyer was building on this property. And he sold and delivered sand to Meyer for use in building the pavilion and gazebo. Meyer testified that Powell only learned the property in question was his after the 2012 survey. Although Powell claims Meyer asked to buy the land, Meyer's testimony indicated he was trying to buy the land outside the fence line. There is no indication that Meyer attempted to conceal his use of the property.

¶21.    Powell also claims Meyer's use of the land was not continuous and uninterrupted for ten years as required by section 15-1-13(1). To reiterate, even if a party is mistaken as to the calls of his deed, "if he has occupied the land for the statutory period under the claim that it was his own and was embraced within the calls of his deed, he is entitled to recover on the ground of adverse possession[.]" *Alexander*, 214 Miss. at 357, 58 So. 2d at 829. Meyer's possession of the land began in 2000. And Meyer's use of the property was continuous and uninterrupted until 2012 when the survey indicated the property in question belonged to Powell.

¶22.    We find substantial evidence in the record to support the chancellor's finding that

Meyer proved adverse possession by clear and convincing evidence.  Therefore, we affirm.[3]

¶23.    **THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**

---

[3] Powell briefly argues that the chancellor erred by denying his counterclaim. Because we affirm the chancellor's decision regarding Meyer's adverse-possession claim, we also affirm the chancellor's denial of Powell's counterclaim.