# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01441-COA

**PATRICIA RUSH**                                                              **APPELLANT**

**v.**

**R & D PROPERTIES LLC**                                                     **APPELLEE**

DATE OF JUDGMENT:                 10/04/2017
TRIAL JUDGE:                             HON. JOSEPH KILGORE
COURT FROM WHICH APPEALED:   WINSTON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         JAMES H. ARNOLD JR.
ATTORNEY FOR APPELLEE:           ROY GREGG ROGERS
NATURE OF THE CASE:                CIVIL - REAL PROPERTY
DISPOSITION:                          AFFIRMED - 10/09/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND CARLTON, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     This appeal concerns the Winston County Chancery Court's denial of a petition to set aside a tax sale of property owned by Patricia Rush, located in Winston County, Mississippi. Patricia applied for a homestead exemption on the property in 2012. Her completed and filed application shows Patricia as the taxpayer, James H. Rush as her spouse, and Patricia's marital status as "married." Patricia signed the homestead exemption application and certified under penalty of perjury that the information it contained was correct. Patricia's 2013 homestead exemption was subsequently denied due to a charge-back for her ad valorem taxes due to James Rush's outstanding state income tax liability. Mississippi Code Annotated section 27-33-63(2) (Rev. 2010) establishes that no claimant for homestead

exemption is eligible for the exemption if the claimant or claimant's spouse fails to comply with income tax laws of the State of Mississippi. When Patricia failed to pay the $551 in ad valorem taxes assessed for year 2013 due to the homestead exemption charge-back, Patricia's property was auctioned to R & D Properties LLC, at an August 2014 Winston County tax sale. The record reflects that Patricia was duly notified of her delinquent ad valorem taxes, the tax sale, and her right of redemption, but she failed to redeem her property within the time prescribed by law.

¶2.     After expiration of the redemption period, however, Patricia filed a petition to set aside the tax sale in chancery court. At the September 2017 hearing on her petition, Patricia focused on how she completed her homestead application, instead of addressing the statutory requirements to obtain an exemption from her ad valorem taxes. She testified that when she filed for her homestead exemption, she told the clerk in the tax assessor's office that she was married, but that she and James Rush were "not together" because he had left her for her cousin. Patricia argued that because she was separated from James Rush, she was not responsible for his income tax liability. According to Patricia, the clerk mistakenly marked her marital status as "married" instead of "separated," and this error allegedly caused the tax assessor to wrongly deny her 2013 homestead exemption based on James Rush's income tax liability. Based on these circumstances, Patricia argued that the tax sale of her property was invalid and should be set aside.

¶3.     Observing that Patricia had certified the validity of the information in her homestead exemption application under penalty of perjury, and that Patricia had been notified of the tax

2

sale as required by law, the chancery court denied Patricia's petition and confirmed the tax sale as valid. Patricia appeals. Finding no error in the chancery court's denial of Patricia's petition and determination that the tax sale was valid, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶4. Patricia Rush owned property located at 3096 Highway 14 West in Louisville, Winston County, Mississippi. She acquired the property through a 1998 quitclaim deed from Leroy Triplett. At that time she was known as Patricia Triplett.[1] She subsequently married James H. Rush.[2] In March 2012, Patricia applied for a homestead exemption on the property. Her completed and filed homestead exemption application contains the following information:

> Patricia A. Rush and her social security number are typed on line 1 -Taxpayer.
>
> James H. Rush and his social security number are typed on line 2 - Name of Spouse.
>
> Line 5 - Marital Status lists five options: Married, Widowed, Separated, Divorced, and Single. "Married" is checked on Patricia's application.[3]
>
> Patricia signed the application, certifying that the information it contained was correct, as follows:
>
>> I do attest and affirm to the best of my knowledge and belief, under penalty of perjury, that the statements made and the answers given are true and correct as of January 1 of the year

---

[1] The quitclaim deed to the property was from Leroy Triplett to Patricia M. Triplett. The record reflects that Petitioner, Patricia Rush, is the same person as Patricia Triplett.

[2] The record does not indicate when this marriage took place.

[3] Regarding the "Separated" status option, the form included three additional questions the applicant must answer if the "Separated" option was chosen.

3

stated above.

The application was also notarized by Maxine Robertson, who attested:

> The applicant herein has, IN PERSON, attested to and signed
> this application before me, this the 19th day of March, 2012.

¶5.    Patricia's property was subsequently sold at a tax sale in August 2014 because she did not pay $551 in 2013 ad valorem taxes on the property.  Patricia filed a petition to set aside the tax sale on July 12, 2017.  R & D responded, and Patricia's petition was heard on September 6, 2017.  The circumstances surrounding Patricia's completion of her homestead exemption application, the 2013 ad valorem tax assessment, and the ensuing tax sale, are addressed in detail below.

¶6.    The current Winston County Tax Collector/Assessor, Darlene Bane, testified about Patricia's homestead exemption application at the September 2017 hearing on Patricia's petition.[4]  Ms. Bane explained that married persons only need to file one application.  In this case, Patricia's homestead exemption application was filed on behalf of both Patricia Rush and James Rush.  Both parties' names and social security numbers are required to complete the application; however, only one signature is required to certify that all the information contained in the application is true and correct.  Ms. Bane testified that Patricia's filed homestead exemption application listed Patricia Rush as the taxpayer and James Rush as her spouse, and that the homestead exemption application indicated that Patricia was "married"

---

[4] Ms. Bane testified that she was not the tax collector/assessor in 2012 when Patricia filed her homestead exemption application, or in 2014 when the tax sale took place, but she had researched the sale and examined the paperwork.  The tax collector/assessor at the time Patricia applied for her homestead exemption did not testify at the hearing.

4

to James Rush when she signed and filed it.

¶7. The record reflects that Patricia's property was subsequently auctioned to R & D at an August 24, 2014, Winston County tax sale when Patricia did not pay $551 in 2013 ad valorem taxes on the property. The $551 was the amount Patricia had received in 2013 as a credit under her homestead exemption. She was subsequently denied her 2013 homestead exemption, however, due to a homestead charge-back relating to James Rush's[5] outstanding income tax liability.[6]

¶8. Specifically, Ms. Bane testified at the hearing that Patricia lost her homestead exemption when the state discovered that James Rush owed income taxes. At that point, Ms. Bane testified, "the state throws a charge-back because they're not going to give credit when there's money due by the same party." As Ms. Bane explained, "[Patricia Rush's 2013] homestead [exemption] was denied due to a homestead charge-back which related to [James Rush's] income tax. So that's what she was charged for— . . . the amount that she had received as a [homestead] credit in the prior year."

¶9. Regarding notice of the delinquent property taxes and the tax sale, Ms. Bane testified that before Patricia's land was sold, notice of the delinquent property taxes was published

---

[5] Patricia's appellate briefing mistakenly provides that the homestead exemption charge-back on the property was due to the income tax liability belonging to Leroy Triplett. The record and the chancery court's order denying Patricia's petition to set aside the tax sale, however, reflect that the homestead charge-back was due to *James Rush's* income tax liability, whose name and social security number appears on line 2 (Name of Spouse) on Patricia's 2012 homestead exemption application.

[6] Section 27-33-63(2) provides that "[n]o claimant for homestead exemption shall be eligible for exemption if the claimant or the claimant's spouse has failed to comply with the income tax laws of this state. . . ."

5

twice in the local newspaper in the time and manner required by law. Additionally, Julie Cunningham, the Winston County Chancery Clerk, testified that Patricia was provided with proper notice of the tax sale and her right of redemption under the applicable statute. She confirmed that the notice was sent via certified mail to Patricia at the address on the quitclaim deed, which matched the address on her homestead application. Ms. Cunningham testified that she had the return receipt signed by Patricia. Patricia offered no evidence or testimony contradicting the testimony of Ms. Bane and Ms. Cunningham that notice of her delinquent property taxes and of the tax sale were provided as required by law.

¶10. Patricia also testified at the September 2017 hearing on her petition. In contrast to the information in her filed and certified 2012 homestead exemption application, Patricia testified at the 2017 hearing that she had been separated from James Rush since 2009; James Rush was not on the deed to the subject property; and she and James had never filed taxes together. Patricia also described what happened when she went to file her homestead exemption application in 2012, as follows:

> So when [the clerk in the tax assessor's office] said, "Are you married," I said, "Yes, ma'am, I'm married, but we are not together." She said, "What's your husband's name," and I told her. She said, "It doesn't mean anything." That's the only way his name got on there . . . . [S]he said, "Well, are you married," and I said, "I'm going to be honest with you. Yes, I'm married, but we are not together. He left me—abandoned me for my first cousin."

¶11. As noted above, Patricia did not pay the taxes necessary to redeem her property, and after the tax sale matured on August 25, 2016, R & D recorded its tax deed on October 4, 2016. In July 2017, Patricia filed her petition to set aside the tax sale.

¶12. After considering the pleadings, and the testimony and exhibits before it at the

6

September 2017 hearing on Patricia's petition, the chancery court denied Patricia's petition, and confirmed the tax sale as valid. In its October 4, 2017 order,[7] the chancery court found that Patricia signed her 2012 homestead exemption application "under penalty of perjury, that the statements made and the answers given are true and correct," and that Patricia submitted that her marital status was "married" rather than "separated." The chancery court found that "[i]t is unknown what exact information that [Patricia] gave in the tax office, but she clearly certified that she reviewed the statement and certified its contents as true and correct." The chancery court further found that it was uncontradicted that the list of delinquent taxes was published in the local newspaper in the time and manner required by law and that Patricia had been properly notified of the tax sale in accordance with the statutory procedure.

¶13. Finding that the tax sale was valid, the chancery court held:

> Though [Patricia Rush] now claims that she and James were separated since 2009 and they never paid taxes together, the responsibility was on Patricia to give accurate information to the county officials who cannot possibly keep track of the relationship statuses and federal tax filing habits of every landowner in Winston County. . . . Because the tax sale was conducted in the manner required by law *as to Patricia*,[8] and was done according to the sworn

---

[7] The order incorporated by reference the chancery court's September 19, 2017 letter ruling.

[8] At the hearing before the chancery court, the chancery clerk admitted that the lienholder on the property was not notified of the tax sale. Patricia argued before the chancery court that because the lienholder was not provided notice, the entire tax sale was invalid and R & D's tax deed was void. Citing *SKL Investments Inc. v. American General Finance Inc.*, 22 So. 3d 1247 (Miss. Ct. App. 2009), the chancery court rejected this argument, holding that the clerk's failure to notify the lienholder rendered the tax sale void as to it, but the tax sale was valid as to Patricia, who was properly notified. *See id.* at 1250 (¶10) ("[Mississippi Code Annotated] section 27-43-11 [(Rev. 2006)] provides that the 'failure to give the required [tax sale] notice to . . . lienors [on the subject property] *shall* render the tax title void as to such lienors, and *as to them only*.' We interpret that provision

7

information she provided, the court has no authority to set aside the valid tax sale as to Patricia.

¶14.    Patricia appeals, asserting one assignment of error: the tax sale was void because she was entitled to her 2013 homestead exemption. Patricia asserts that the clerk in the tax collector/assessor's office erred in designating her as "married" rather than "separated" on her homestead exemption application, and, therefore, her homestead exemption should not have been denied due to James Rush's income tax liability. For this reason, Patricia argues, the chancery court erred in denying her petition to set aside the tax sale of her property.

### STANDARD OF REVIEW

¶15.    "This Court employs a limited standard of review when reviewing the decisions of a chancellor." *Little v. Richey*, 230 So. 3d 336, 338 (¶9) (Miss. Ct. App. 2017) (quoting *Powell v. Meyer*, 203 So. 3d 648, 652 (¶16) (Miss. Ct. App. 2016)). "We will only reverse a chancellor's determinations if 'they were manifestly wrong, clearly erroneous, or the chancellor applied an incorrect legal standard.'" *Id.*; *see SKL Invs.*, 22 So. 3d at 1249 (¶4) (applying the same standard in a tax sale dispute).

### DISCUSSION

¶16.    Patricia claims that in completing her homestead exemption application in 2012, the clerk asked if she was married to James Rush, and she told the clerk, "Yes, I'm married, but we are not together. He left me—abandoned me for my first cousin." Relying on cases in which tax sales were invalidated based upon a clerical error, Patricia asserts that the tax sale

---

to mean that the tax sale is confirmed as to all others except those lienholders who failed to receive the statutorily-required notice."). On appeal, Patricia does not raise the issue of the clerk's failure to serve the lienholder.

in this case should likewise be set aside because the clerk erred in failing to mark "separated" in the marital status line of Patricia's homestead exemption application.[9] Patricia's argument is misplaced in asserting that the charge-back occurred due to clerical error. She is not being held liable for her estranged husband's late income tax liability, as she asserts. She is accountable, however, for paying her ad valorem property taxes, and, as established by section 27-33-63(2), she loses the privilege of an exemption from paying her ad valorem taxes if she or her spouse fails to comply with state income tax laws.

¶17. The following provision in section 27-33-63(2) provides no exception for separated or estranged spouses: "No claimant for homestead exemption shall be eligible for exemption if the claimant *or the claimant's spouse* has failed to comply with the income tax laws of this state . . . ." (Emphasis added). In short, the charge-back of Patricia's ad valorem taxes for 2013 reflects what she owed in property taxes for her property for 2013. It does not reflect liability for her estranged spouse's state income taxes. The record reflects that Patricia was duly notified of her delinquent ad valorem taxes, her right to redeem, and the tax sale. Accordingly, we affirm the chancery court's order confirming the validity of the tax sale.

¶18. In support of her argument that the tax sale of her property should be set aside due to a clerical error, Patricia relies primarily on *Carmadelle v. Custin*, 208 So. 2d 51 (Miss. 1968). In that case, Mr. Custin, the landowner, made an effort to pay all his taxes and have the land

---

[9] Patricia does not explain that the "Separated" status option on the homestead application form included three additional questions the applicant must answer if the "Separated" option was chosen. Thus Patricia not only failed to notice the wrong status box was checked, but she also failed to notice that none of the questions associated with the "Separated" status option had been addressed.

records examined to detect any flaws in his title. *Id.* at 55. Mr. Custin, however, was prevented from discovering a tax deed on his property due to an incorrect description in the tax collector's certified list of lands sold for taxes, which then caused the tax sale to be improperly indexed. *Id.* Though the indexing error was later corrected by the chancery clerk, the Custins were not notified; nor did the sheriff serve them with the statutory tax sale notice, though the Custins were living on the property at the time. *Id.* at 52, 55. The Mississippi Supreme Court held that this combination of clerical errors supported the chancellor's decision to allow the Custins to redeem their property. *Id*. at 55. In the other cases cited by Patricia, the tax sale was set aside, or the landowners were allowed to redeem their property after the statutory redemption period, based upon unilateral clerical errors in the statutory tax sale notice procedure.[10] As acknowledged, lack of notice is not an issue in the instant case. As the chancery court determined, and as the record reflects, Patricia was notified of the tax sale of her property in the time and manner required by law. *See* Miss. Code Ann. § 27-43-1 (Rev. 2017) (setting forth the timing requirements and form of the statutory tax sale notice).

---

[10] *See Reed v. Florimonte*, 987 So. 2d 967, 974-75 (¶21) (Miss. 2008) (affirming chancellor's decision to void a tax sale where the chancery clerk did not comply with the "due diligence" requirements of locating the landowner to supply the statutory tax sale notice); *Kron v. Van Cleave*, 339 So. 2d 559, 562 (Miss. 1976) (affirming the chancellor's determination that the City of Pascagoula's failure to retrieve relevant data from Jackson County on the subject tract of land, so that the landowner did not receive notice of the tax sale, was a sufficient clerical error to allow the landowner an opportunity to redeem the property after the redemption period had expired); *Moore v. Marathon Asset Mgmt. LLC*, 973 So. 2d 1017, 1021-22 (¶¶16, 22) (Miss. Ct. App. 2008) (reversing the chancellor's refusal to set aside a tax sale where the chancery clerk failed to comply with the statutory tax sale notice requirements); *Lawrence v. Rankin*, 870 So. 2d 673, 676 (¶¶13-14) (Miss. Ct. App. 2004) (affirming the chancellor's decision to cancel the tax deed where chancery clerk did not furnish an affidavit demonstrating due diligence in attempting to serve the statutory tax-sale notice).

¶19.    The cases Patricia relies upon are wholly distinguishable from the circumstances here, and do not support setting aside the tax sale of her property in this case.  Section 27-33-63(2) does not allow the privilege of homestead exemption if either spouse fails to comply with state income laws—regardless of whether Patricia put on her homestead exemption application that she was married or separated.[11]

¶20.    In sum, the record reflects that the tax sale was conducted in the manner required by law as to Patricia and was done according to the sworn information Patricia provided. Particularly under our limited standard of review, the chancery court's decision to validate the tax sale was not "manifestly wrong," or "clearly erroneous."  On the contrary, based upon our review of the record and the applicable law, we find that the chancery court was well within its authority to deny Patricia's petition and validate the tax sale of her property in reliance upon the information in Patricia's certified homestead exemption application; and the uncontradicted testimony that (1) notice of Patricia's delinquent property taxes was published as required by law, and (2) Patricia she was provided with the statutorily-mandated notice of the tax sale of her property, and her right of redemption by a date certain.

¶21.    **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

---

[11] "We apply the plain meaning of the statute when the statute is not ambiguous." *Armstrong v. Estate of Thames*, 958 So. 2d 1258, 1259 (¶5) (Miss. Ct. App. 2007).