# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00548-COA

**CLIFFORD C. FRISBY AND OASIS REAL ESTATE INVESTMENT, INC.**                                    APPELLANTS

**v.**

**FERRELL "BJ" WARDEN**                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/04/2016 |
| TRIAL JUDGE: | HON. JENNIFER T. SCHLOEGEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | MICHAEL JOSEPH YENTZEN |
| ATTORNEYS FOR APPELLEE: | JAMES F. THOMPSON WILLIAM W. DREHER JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 05/08/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT**:

¶1.     Clifford C. Frisby appeals from the Harrison County Chancery Court's finding that three handwritten documents were enforceable contracts between Frisby and Ferrell Warden for the sale of a home to Warden. The documents provided for credit toward the purchase price of the property in exchange for work performed by Warden. The chancellor ordered specific performance by Frisby and that Warden pay the remaining amount owed. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Oasis Real Estate Investment, Inc. is a Mississippi Corporation. Frisby is its president and owner.[1] In June 2010, Frisby acquired the property through a quitclaim deed from Michael Neill. In 2011, Frisby allowed Warden to move into this property. On February 9, 2015, Frisby filed an eviction action against Warden in justice court. On March 19, 2015, in response to the eviction action, Warden filed a "Petition To Enforce Purchase Contract and Stay Proceedings" against Frisby and Oasis in chancery court. Warden sought enforcement of three handwritten contracts between himself and Frisby for purchase of the property. In support of his petition, Warden attached three handwritten documents that were apparently signed by both parties. The documents detailed work that Warden performed for Frisby, and indicated that Warden's work would count toward the $24,000 purchase price of the property.[2] Warden also sought a stay of the justice court eviction proceedings during the pendency of the chancery court proceedings.

¶3.     On May 12, 2015, Frisby answered Warden's petition with a motion to dismiss, a motion to deny stay of eviction, and a counterclaim for fraud alleging that his signatures on the agreements were forgeries. He further requested monetary damages for fraud, slander of title, and attorney's fees.  On July 15, 2015, the chancellor heard Frisby's motion to dismiss and motion to deny stay of eviction, ultimately denying both of Frisby's motions. The

---

[1] The chancellor treated Frisby and Oasis as one entity. In her judgment, the chancellor explained that Frisby is the owner of Oasis and referred to Frisby and Oasis collectively "hereinafter" as "Defendant" or "Mr. Frisby." This determination was not appealed. Therefore, for the purpose of this appeal Frisby and Oasis are referred to collectively as "Frisby."

[2] These agreements were dated April 1, 2011, October 22, 2013, and January 2, 2014.

chancellor also transferred the justice court eviction action and consolidated it with Warden's enforcement-of-contract action in the chancery court.

¶4. On August 2, 2016, and September 8, 2016, the chancellor held a hearing on the consolidated matter. Warden introduced duplicates of the three alleged contracts and called four witnesses, including Frisby as an adverse witness. Frisby called six witnesses, including an expert in forensic document examination. At the close of the testimony, the chancellor verbally ordered Frisby to specifically perform on the three contracts and ordered Warden, based on the amounts previously paid pursuant to the contracts, to pay $11,300 as full and final payment toward the purchase price of the property. A final judgment reflecting her verbal order was entered on October 4, 2016. Aggrieved, Frisby filed an unsuccessful motion for reconsideration and to set aside the judgment.

¶5. Frisby timely appeals from the final judgment and denial of his motion for reconsideration. Frisby raises five issues: (1) whether the chancellor erred in allowing duplicates of the handwritten documents into evidence; (2) whether the chancellor erred in placing the burden of proof on Frisby to prove his fraud allegation; (3) whether Warden carried his burden of proof; (4) whether the chancellor erred in finding that Warden detrimentally relied on Frisby's promise; and (5) whether Frisby presented sufficient evidence to prevail on his fraud claim.

## STANDARD OF REVIEW

¶6. This Court employs a limited standard of review in reviewing a chancellor's decision. *Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997). Thus, the chancellor's findings of fact

will not be disturbed upon review unless they were manifestly wrong, clearly erroneous, or the chancellor applied the wrong legal standard. *Powell v. Meyer*, 203 So. 3d 648, 652 (¶16) (Miss. Ct. App. 2016). Further, the "standard of review for the trial court's admission or suppression of evidence, including expert testimony, is abuse of discretion." *Tunica Cty. v. Matthews*, 926 So. 2d 209, 212 (¶5) (Miss. 2006). Questions of law, however, are reviewed de novo. *Tillman v. Mitchell*, 73 So. 3d 556, 558 (¶8) (Miss. Ct. App. 2011).

## DISCUSSION

### I. Whether the chancellor erred in admitting the handwritten agreements into evidence.

¶7. Frisby asserts that the chancellor improperly admitted the disputed handwritten contracts into evidence. According to Frisby, these documents were duplicates of original handwritten documents that he never signed. Therefore, he argues that pursuant to Mississippi Rules of Evidence 1002 and 1003, the duplicates were inadmissible because there was a genuine question as to their authenticity. In response, Warden asserts Frisby has offered nothing to show that the chancellor abused her discretion nor that any substantial right has been affected. A review of the record indicates that the chancellor, in denying Frisby's motion for reconsideration, explained the handwritten contracts were admitted into evidence pursuant to Mississippi Rule of Evidence 1004(c). We find this determination was not manifest error.

¶8. Frisby correctly asserts that pursuant to Rule 1002, known as the best-evidence rule, an original writing is generally required to prove its contents. Further, pursuant to Rule 1003, Frisby correctly asserts that a duplicate cannot be admitted when a genuine issue has been

4

raised about the original's authenticity. However, an exception to the best-evidence rule exists when the party against whom the original would be offered had control of the original, received notice that the original would be subject to proof at trial, and failed to produce the original at trial. M.R.E. 1004(c).

¶9. In the present case, Warden introduced duplicates of three handwritten documents into evidence in support of his complaint for specific performance. Frisby initially objected to their introduction, but allowed them to be introduced "for the purpose of this hearing," while still contesting their authenticity. Thus, the hearing proceeded to determine the authenticity of the alleged contracts, with both parties presenting multiple witnesses.

¶10. During the hearing, Frisby testified as an adverse witness and explained that he had never seen the three alleged contracts before and that Warden had never been to his office. However, Warden testified that he drafted all three of the handwritten documents "so that [he] could have some kind of documentation on a deal [they] had on the house." Further, Warden testified that while he originally had the original documents, he met Frisby at Frisby's office, where Frisby made copies of the documents and retained the originals, and gave Warden copies. Michael Neill, the previous owner of the property, also testified for Warden. He testified that he deeded the property to Frisby in 2010, and that when he spoke with Warden in 2011 or early 2012, Warden said he was buying the house from Frisby and "doing odd jobs" to pay off the house. Further, Neill testified that he saw Frisby sign a document in 2014, but that he did not know the document's purpose. Neill later testified that he had overheard Frisby and Warden discussing ownership of the house for labor.

¶11. As previously mentioned, the admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of discretion. *Tunica Cty.*, 926 So. 2d at 212 (¶5). Further, "the chancellor sits as the fact finder and is the sole judge of the credibility of a witness when resolving factual disputes." *Stokes v. Campbell*, 794 So. 2d 1045, 1048 (¶11) (Miss. Ct. App. 2001). As such, it was the chancellor's job as trier of fact to determine which version she found more credible. *LeBlanc v. Andrews*, 931 So. 2d 683, 689 (¶19) (Miss. Ct. App. 2006). The chancellor, after hearing all the evidence, accepted Warden's testimony as the most credible, admitting the duplicates pursuant to Rule 1004(c). Because there was substantial credible evidence in the record to support the chancellor's finding, this Court must accept them. Accordingly, this issue is without merit.

**II.      Whether the chancellor incorrectly placed the burden of proof of the fraud allegations on Frisby.**

¶12. Next, Frisby argues that the chancellor erroneously presumed that the disputed documents were authentic, which incorrectly shifted the burden to Frisby to prove his fraud claim by clear and convincing evidence. However, a review of the record indicates that the chancellor, after hearing evidence by both parties, found that the contracts were valid and enforceable and that Frisby failed to establish that the signatures were a product of fraud.

¶13. Although Frisby is correct that "under Mississippi law . . . the burden of proof rests on the claimant," the record reveals that Frisby, as part of his answer to Warden's petition to enforce the contracts, asserted a counterclaim for fraud, alleging that Warden forged Frisby's name on the three contracts. A claim of "fraud has to be clearly alleged, and, on hearing, *there is a presumption against fraud*, and the facts and circumstances relied upon

6

and alleged must be proved by clear and convincing evidence." *Clement v. R. L. Burns Corp.*, 373 So. 2d 790, 795 (Miss. 1979) (emphasis added). Therefore, while Warden had a burden to prove the contracts were enforceable, Frisby, as the counterclaimant, had the burden to prove his counterclaim of fraud by clear and convincing evidence to overcome the presumption against fraud.

¶14.    The chancellor, ruling from the bench, explained that "looking to the contents of the contracts, they are clearly contracts for the sale and purchase of land." Additionally, the chancellor found that all three contracts identified the property for sale by address and "made it clear that it was the parties' intent for the subject property to be purchased." Moreover, the chancellor, interpreting the contracts, stated that "it only appears that Mr. Warden . . . intended to perform and Mr. Frisby intended to accept the work in exchange for irregular installment payments towards the purchase price of the home."

¶15.    Further, prior to her discussion of the contracts' validity, the chancellor explained that Frisby's "expert's opinion [did] not leave the court with a firm conviction that the signatures were forged by the plaintiff." Moreover, the chancellor explained that testimony from two witnesses, Neill and Brandon Wooldridge, evidenced the authenticity of the signatures. Therefore, the chancellor found that Frisby had failed to overcome the presumption against fraud. Having reviewed the record, it is clear that the chancellor understood the burdens required by each party. Therefore, this issue is without merit.

### III.    Whether Warden carried his burden of proof.

¶16.    Next, Frisby asserts that Warden failed to carry his burden of proof during trial

7

because he could not prove his case by a preponderance of the evidence. However, in his brief, he does not cite any supporting law or any evidence to support the assignment of error. Rather, he only reasserts the issues previously argued in his brief. It is a well-established axiom of law that "[i]n the absence of meaningful argument and citation of authority, an appellate court generally will not consider an assignment of error." *Doss v. Claiborne Cty. Bd. of Supervisors*, 230 So. 3d 1100, 1104 (¶10) (Miss. Ct. App. 2017) (quoting *Randolph v. State*, 852 So. 2d 547, 558 (¶29) (Miss. 2002)); *see* M.R.A.P. 28(a)(9); *Satterfield v. State*, 158 So. 3d 380, 383 (¶6) (Miss. Ct. App. 2015) ("An appellant cannot give cursory treatment to an issue and expect this Court to uncover a basis for the claims, either in the record or in the law."). Thus, having addressed Frisby's previous issues and finding that no further meaningful argument has been made to support the contention that Warden failed to carry his burden of proof, we find that Frisby has waived this issue on appeal.

**IV. Whether the chancellor erred in finding that Warden detrimentally relied on Frisby's promise.**

¶17. Next, Frisby argues that the chancellor erred in alternatively finding that Warden detrimentally relied on Frisby's promise to accept work in exchange for the purchase of the home. Frisby contends that the evidence and testimony offered at trial showed by a preponderance of the evidence that Warden traced Frisby's signature on the contracts and therefore Warden had unclean hands and was not entitled to equitable relief. In support of this contention, Frisby cites to the testimony of his expert and discredits Wooldridge's testimony, which according to Frisby, was biased and contrary to the evidence.

¶18. Frisby is correct that detrimental reliance is an equitable principle and cannot be

awarded to a party with unclean hands. *See Houston v. Willis*, 24 So. 3d 412, 421 (¶31) (Miss. Ct. App. 2009) ("It is well established that those seeking relief in equity must come to court with clean hands; the failure to do so may result in the refusal by the court to grant a remedy."). However, his argument is based on disputed questions of fact, which are left to the sound discretion of the chancellor. *See Carter v. Carter*, 735 So. 2d 1109, 1114 (¶18) (Miss. Ct. App. 1999). Moreover, "[t]he chancellor, by [her] presence in the courtroom, is best equipped to listen to the witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses." *Id.* at (¶19).

¶19. In the present case, the chancellor, after hearing evidence and testimony by both parties, found that Warden's detrimental reliance was evidenced by his continued work for Frisby, the series of contracts showing the value of work performed, and Warden's own improvements to the property, which had been made uninhabitable by Hurricane Katrina. Furthermore, the chancellor explained that she was not persuaded by Frisby's expert's testimony. She explained that although Frisby's expert opined that the signatures were "probably" unnatural, this "did not leave the court with a firm conviction that the signatures were forged by [Warden]." Finding that there was substantial credible evidence in the record to support the chancellor's decision, we cannot find that it was manifestly in error.

## V. Whether Frisby presented sufficient evidence to prevail on his fraud claim.

¶20. Frisby asserts that he presented sufficient evidence to prevail on his fraud claim because his expert's conclusion that the signatures were "probably" traced was sufficient to

9

prove his claim by clear and convincing evidence. In support of this assertion, Frisby cites to a publication by Sandra Ramsey Lines, titled *Legal Terms for Expressing Conclusions in Court*, arguing that "[a]lthough the expert could have or . . . perhaps should have reached a more certain conclusion [regarding the traced signatures], his 'probable' conclusion is sufficient to meet the civil burden of preponderance of the evidence." However, a preponderance of the evidence standard is a lesser standard than the well-established clear and convincing evidence standard required to prove fraud. *See Cotton v. McConnell*, 435 So. 2d 683, 685 (Miss. 1983) ("[I]t is well established in this state that before a plaintiff may prevail on a charge of fraud, he must prove fraud by clear and convincing evidence."). Clear and convincing evidence has been defined as:

> [T]hat weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct[,] and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.

*Moran v. Fairley*, 919 So. 2d 969, 975 (¶24) (Miss. Ct. App. 2005).

¶21.    During the hearing on September 9, the chancellor explained that the expert's opinion "[did] not leave the court with a firm conviction that the signatures were forged." The chancellor further explained that although the expert's report clearly indicated that he compared the signature from the contracts and Frisby's signature, his report "stops short of giving a conclusion drawn from this comparison." Further, the chancellor held that the expert's "probable" finding was one-step above "inconclusive" according to a scale included in the expert's report. Therefore, we cannot conclude that the chancellor committed manifest

10

error in finding that the expert's "probable" conclusion did not meet the clear-and-convincing evidence standard.

## CONCLUSION

¶22. In summation, the chancellor did not commit manifest error in enforcing three contracts for the sale of land and ordering specific performance. Although the authenticity of the contracts was disputed, the chancellor did not err in admitting them into evidence and proceeding with a trial to determine the authenticity of the signatures. Further, the chancellor, after hearing the testimony and evidence from both parties, did not manifestly err in finding that Warden had proven the validity of the contracts. Additionally, because Frisby asserted a counterclaim for fraud, the chancellor did not err in requiring him to prove his case by clear and convincing evidence. Moreover, the chancellor did not commit manifest error in finding that Warden detrimentally relied on Frisby's promise. Therefore, we affirm the chancellor's judgment requiring Frisby to specifically perform on the parties' three contracts and ordering Warden, based on amounts previously paid, to pay Frisby $11,300 as full and final payment of purchase price of the property.

¶23. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**