# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01158-COA

DIANE L. MERRITT                                                              APPELLANT

v.

KENNETH MERRITT                                                              APPELLEE

DATE OF JUDGMENT:              09/13/2024
TRIAL JUDGE:                  HON. D. NEIL HARRIS SR.
COURT FROM WHICH APPEALED:    GREENE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       WILLIAM BRYAN BEDWELL
ATTORNEY FOR APPELLEE:        KALEIGH CLARK NELSON
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  REVERSED, RENDERED, AND
                              REMANDED - 06/16/2026
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., EMFINGER AND LASSITTER ST. PÉ, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     A final judgment of divorce for Diane and Kenneth Merritt was entered on April 19, 2022, in the Chancery Court of Greene County, Mississippi, on the ground of irreconcilable differences. Diane filed a "Complaint to Set Aside and Nullify Judgment of Divorce" on October 3, 2022. In the complaint and her attached affidavit in support, Diane contends that her signature was forged on the pleadings used to obtain the judgment, that she was never served with process, that she had no notice of the proceedings, and that she did not consent to the divorce. After her claim for relief was denied, Diane filed this appeal.

## FACTS AND PROCEDURAL HISTORY

¶2.     Diane and Kenneth were married in June 2017 in Perry County, Mississippi. The

couple separated in May 2019 while living in Greene County, Mississippi, where Kenneth filed his "Complaint for Divorce" on January 10, 2022. In his complaint, Kenneth sought a divorce from Diane on the ground of habitual, cruel, and inhuman treatment or, in the alternative, on the ground of irreconcilable differences. On February 2, 2022, a Rule 4 Summons was issued for Diane by the chancery clerk. *See* M.R.C.P. 4. However, there was no return filed with the chancery clerk showing that process had been served.[1]

¶3.     A "Motion Withdrawing Fault Grounds" was prepared and filed by Kenneth's attorney, William L. Peebles, on March 23, 2022. A "Waiver of Financial Statements and Disclosure," prepared by Peebles, was filed on April 11, 2022, which, by Diane's notarized signature, she purported to join. On April 13, 2022, a "Property Settlement Agreement" (PSA), also prepared by Peebles, was filed. Kenneth had signed the PSA before a notary public on March 21; however, the PSA purports to show that Diane signed the document before a different notary public on April 11, 2022.

¶4.     On April 19, 2022, based upon documents that Diane now claims were forged, the chancellor entered both an "Order Dismissing Fault Grounds" and a "Final Judgment of Divorce" on the ground of irreconcilable differences, both prepared by Peebles. This judgment incorporated the PSA. On July 1, 2022, the chancellor entered an order, prepared

---

[1] As will be discussed *infra*, Diane contends that she was not served with process and had no knowledge of the proceedings until well after the divorce was granted. According to Diane, her first knowledge of the divorce action came when a person approached her in a grocery store and told her she had heard about Diane's divorce and informed Diane that Kenneth had remarried.

by Peebles, directing that a deputy sheriff accompany Kenneth to the marital residence to retrieve items of personal property awarded to Kenneth in the PSA that were listed on an attached exhibit.

¶5. On October 3, 2022, Diane filed a "Complaint to Set Aside Judgment and Nullify Judgment of Divorce."[2] In this complaint, Diane denied being a party to, agreeing to, signing, or having any knowledge of the Motion Withdrawing Fault Grounds, Waiver of Financial Statements and Disclosures, or the PSA. Diane alleged that she is "the victim of fraud at the hands and actions of [Kenneth]." The complaint states that it was brought pursuant to Mississippi Rule of Civil Procedure 60 and sought to have the judgment of divorce, including the PSA, set aside on the grounds of fraud, misrepresentation, and the misconduct of Kenneth. Attached to the complaint is Diane's affidavit wherein she swears that she did not sign the three documents in question and did not authorize her name to be affixed to the documents. She swore that she did not consent to the divorce or the PSA and that her signatures on these documents were forged. Kenneth was served with a Rule 81 summons and a copy of the complaint on October 7, 2022. *See* M.R.C.P. 81. Kaleigh Nelson appeared as counsel for Kenneth on May 3, 2023, and filed an answer to Diane's complaint, denying all of Diane's allegations. This answer included a motion for an extension of time to respond to discovery requests on his behalf.[3]

---

[2] In filing this complaint, Diane was represented by counsel, Zachary M. Vaughn.

[3] Nelson is not associated with Peebles, the attorney who procured the divorce for Kenneth.

¶6.     After a long and convoluted path through several continuances, efforts at discovery, and motions to compel discovery, which were never resolved, a hearing on Diane's complaint to set aside the judgment of divorce was held in mid-August 2023. Diane appeared, represented by Vaughn, and Kenneth appeared, represented by Nelson. Vaughn called Diane as the first witness in support of her complaint to set aside the judgment based on fraud upon the court. Diane testified that she had no knowledge that Kenneth had filed for divorce. As noted above, according to Diane, her first knowledge of the divorce proceeding came by word of mouth in the community after the judgment of divorce had been entered. She testified that she was not served with process. She examined the questioned document, which had been admitted into evidence. She testified that she did not sign those documents. She testified that Peebles had represented Kenneth in an unrelated proceeding, but she did not meet with Peebles during 2022. On cross-examination, Diane testified that she "found" Peebles to represent Kenneth in a prior divorce, before their marriage. She may have visited Peebles' office during the process of the prior divorce, but never without Kenneth. She also testified that she did not know Peebles' secretary or paralegal. She affirmed again that she was not contacted by Peebles' office in 2022, was not contacted by a process server, and was never served with process in this matter. When asked by Kenneth's attorney whether she was accusing him of signing her name, Diane replied:

> I didn't say [Kenneth]. I'm not saying [Kenneth] because it is not his signature either. It is - - but I mean, he may possibly have given him permission or his attorney whatever time so they can do that for him, but not for me, but the signatures are signed by the same person is my point that I like to make neither

4

one of them are ours.

Diane testified that she and Kenneth never discussed divorce. When asked by the chancellor whether she was accusing Kenneth of forging her name on the documents, Diane responded by stating that she was not accusing Kenneth of forging her name, but she maintained that someone did forge them.

¶7. Heather Smith was called as Diane's next witness. By Smith's signature and notary seal, she purportedly attested Diane's signature on the questioned documents. Smith testified that she was a paralegal for attorney Elizabeth Porter in Hattiesburg. Smith told the court that she only notarized signatures in cases handled by Porter. She was shown the questioned documents and testified that she did not sign or notarize those documents. Smith told the court that her firm had not represented Diane in any matter and that she had never met Diane prior to being questioned about her notary seal and signature on the questioned document. Smith pointed out that while the seal appeared to be her seal, it was extremely small. The signature appeared to be her signature, but Smith testified that she did not sign or notarize any of the documents. She testified that in the spring of 2022, her office had a domestic case in Forrest County with Peebles on the other side. She testified that the notary seal on the disputed document is about one-fourth the size of her actual notary seal. She also noted that the angle of the seal and her signature are exactly the same on all three documents. Smith was not cross-examined by Kenneth's attorney, and Diane's counsel announced that he had no further witnesses.

¶8.     Kenneth was then called to testify as the sole witness in opposition to Diane's claim for relief from the judgment of divorce. Kenneth told the court that he first contacted Peebles in 2018 to represent him in a case where, after his wife passed away, he was fighting his parents-in-law for custody of his daughter. He testified that he hired Peebles again in 2019 to obtain a divorce in the present case. Kenneth gave Peebles all the contact information he had for Diane so that Peebles could have Diane served with process. Kenneth testified he was told they tried to serve Diane several times. He said that Peebles made the decision to move from a contested divorce to a claim of irreconcilable differences divorce. Kenneth testified that Peebles was supposed to draft the necessary paperwork and serve it on Diane. When shown the questioned documents, Kenneth told the court that he did not sign Diane's name on those documents. He said that Peebles' secretary, Deanna Carpenter, told him (Kenneth) he could give her permission to sign his name to the documents, and Kenneth gave Carpenter permission to sign his name, and only his name, to the documents. According to Kenneth, Carpenter told him they were going to finish the paperwork, but she did not discuss anything with him about signing Diane's name. Kenneth expressly denied, several times, that he gave Carpenter permission to sign Diane's name. On cross-examination, Kenneth said that he never spoke with the process server and that all the information that he had discussed came from Peebles' office, mainly Carpenter. He again testified that he gave Carpenter permission to sign his name. Kenneth further testified that although he never spoke with Diane about the divorce, he indicated he hired Peebles to do that. Kenneth testified that all the paperwork was

handled through the mail. When asked whether he would recognize Diane's signature, he said no and that he could barely write his own name. On redirect examination, Kenneth testified that he was not familiar with the legal process and that he trusted Peebles' office to do what he paid them to do. Kenneth's counsel then announced that the opposition had no further witnesses. At that point, the proceedings were adjourned, and the chancellor asked to speak with both counsel off the record.

¶9. The next action of record was the chancellor's "Order Setting Trial," which was filed on September 7, 2023. In this order the court stated that the order was being entered as a result of the hearing on August 16, 2023, on the "Petition to Set Aside the Final Order of Divorce." The order then states:

> That after hearing all testimony and evidence on said date the Court does ORDER AND ADJUDGE that trial be set on the 5th of December, 2023, at 9:30 a.m., at the Chancery Courthouse of Greene Co., in Leakesville, MS, to try the merits of the original divorce and to determine the division of assets and debts.

While this order does not expressly set aside the "Final Judgment of Divorce" entered on April 19, 2022, it seems clear that the chancellor intended to do so. If this order did not set aside the original judgment, there would have been no reason for the parties to appear on December 5 for a trial on the merits of "*the original divorce and to determine the division of assets and debts.*"

¶10. In any event, when the parties appeared on December 5, no witnesses were called, and there was no trial on the merits. The transcript shows what can only be described as a state

7

of confusion in the courtroom. The record reflects the proceeding began as follows:

THE COURT: All right. Where are we on this? Are you the moving party, Mr. Vaughn?

MR. VAUGHN: Yes, I'm Zach Vaughn for the petitioner of this case, Ms. Diane Merritt.[4]

THE COURT: What do you want me to do, Ms. Merritt?

[DIANE]: Sir, I have some questions. I was asking Zach if this is the day that we would be granted a divorce? Would it be for - - is this the proceeding for today?

THE COURT: I don't know. I would have to hear the case. What do you want me to do?

The confusion continued with a back-and-forth discussion between the chancellor and Diane concerning documentation she needed to proceed with the trial on the merits of the divorce. At some point, Vaughn asked the court to allow him to withdraw as Diane's counsel due to a conflict. After more confusion, Diane agreed to allow Vaughn to withdraw as long as she was given an opportunity to obtain new counsel. As the proceedings continued, it became apparent that Vaughn's conflict arose based upon information Vaughn received that day from Nelson, Kenneth's attorney. Nelson subsequently advised the court that Diane had been arrested in October and charged with possession of a controlled substance while in possession of a firearm. Nelson also brought up old criminal charges that apparently occurred

---

[4] As noted, the September 7 order set a trial on the merits of the original divorce. Kenneth was the plaintiff and should have been directed to proceed. The issue of Diane's petition had been seemingly decided by that prior order. Vaughn should not have stated that he was the moving party.

well before the present divorce action was filed. Nelson began to insist that she did not believe Diane could pass a drug test and that the case should be dismissed. Diane admitted that she had not told Vaughn of the new charge because she did not believe it was relevant to the present action. When the chancellor asked whether she could pass a drug test, Diane told the chancellor she could. The chancellor then ordered Diane to take a drug screen that day, stating that if Diane failed to take the test, Nelson's motion to dismiss would be granted. If Diane passed the test, the chancellor stated that the matter would be continued to another date to give Diane the opportunity to retain new counsel. Diane passed the drug screen, and the matter was reset for trial.

¶11. After a series of continuances and discovery issues that were never resolved, the parties appeared for trial on September 13, 2024. Kenneth continued to be represented by Nelson, and Diane was represented by new counsel, William B. Bedwell. The transcript reveals that Diane was late for court. While waiting for Diane to appear, there was a general discussion concerning exhibits to be introduced at the hearing. During the discussion, Nelson asked the chancellor how to proceed in light of the fact that the chancellor had already heard testimony in the case. The chancellor stated that he had a transcript, but he noted that there had been "a lot of hearings and several different lawyers in the case." The chancellor asked whether the parties wished to start at "square one" or carry the prior testimony forward. Nelson advised that the transcript that had been provided was not from the August 2023 hearing when both of the parties and the notary testified. She suggested that would be the

transcript that would be more beneficial and needed to be considered. The chancellor suggested that both sides should "pa[re] your case down."

¶12. When the hearing finally began, Diane was announced, again, as the moving party as though the September 7 order had not set aside the judgment of divorce pursuant to Diane's claim for relief under Rule 60(b) for fraud upon the court. Bedwell called Diane as the first and only witness. She again denied signing any of the questioned documents. Her testimony then was directed to the merits of the distribution of assets and debts. Diane was cross-examined by Kenneth's counsel concerning her knowledge of the PSA. Diane told the court that none of it was correct. While Nelson suggested that Kenneth did not get all of the marital property because she retained ownership of her home, Diane testified that she owned the home before she met Kenneth. Nelson continued with her cross-examination concerning items from the PSA. The focus of Nelson's questioning was to suggest that Diane was on meth while the PSA and judgment of divorce were being completed. Diane denied the allegation. Diane was shown documents that indicated that she had been arrested in May 2021 for possession of meth, to which Diane advised the court that the charge had been dropped. Diane was shown text messages from the relevant time period, and Nelson asked whether there was a possibility that during the period when the questioned documents were being executed, that she was on meth but simply did not remember it. Diane replied that she remembered it all very well. There was no redirect, and Diane rested her case.

¶13. Kenneth was called as his only witness in response. He testified that he did not forge

10

Diane's name on any document. Kenneth testified that Diane started using meth toward the end of their marriage. Kenneth testified that when Diane was using meth, she would not know what was going on around her. When she was off meth, everything was fine. Kenneth stated that he has remarried since the judgment of divorce was entered and asked the chancellor to leave the prior judgment in place. On cross-examination, Kenneth admitted that he did not put anything about drug use in his complaint for divorce. He confirmed that he signed some documents but also authorized his girlfriend to sign his name on other documents. Kenneth said that Carpenter had told him it was okay for his girlfriend to sign his name with his permission. According to Kenneth, this was necessary because he was working out of state. He again testified that he had no knowledge as to who may have signed Diane's name to the documents.

¶14.    Perhaps the most telling portion of the transcript, after both parties had rested their cases, was the following exchange:

> THE COURT:        Did Heather Smith ever testify? She's the notary on Ms.
> Merritt's - -
>
> MR. BEDWELL:      Yes sir. I believe she did. She filed what - - Exhibit 5,
> she filed a response for that subpoena duces tecum as
> well. Attached to that was an example of where she
> believe the notary block was stolen from her, that it
> seemed to match perfectly.
>
> MS. NELSON:       That's correct, Judge. She did testify to all of that.
>
> THE COURT:        Okay.
>
> MS. NELSON:       And she did not work in Mr. Peebles' office.

THE COURT:     Are Exhibits 1 through 5 in evidence?

MR. BEDWELL:   We objected to any of them that were offered.

THE COURT:     Ms. Merritt testified about them.

MS. NELSON:    And Judge, I did not move on that. I think it got a little convoluted. But, I will be glad to move that they be entered now. We went through testimony on them.

THE COURT:     She testified about them. So they are going into evidence.

. . . .

THE COURT:     Okay. All right. I will look at all of this stuff, and I will try to get you a decision out. Thank you.

Trial Exhibit D-5, which was admitted into evidence at this hearing, was an affidavit dated April 24, 2023, by Heather Smith, the notary who testified during the August 2023 hearing.[5] In this affidavit Smith contends that her signature and stamp "were clearly copied on the documents in question." Smith's affidavit continues:

> That William Peebles' office filed the documents in question in this above referenced matter, and at the time of their filing, his office had in their possession an affidavit from my employer's client in a Forrest County Chancery case in which he was the opposing counsel. The affidavit for Forrest County matter has my exact signature and notary stamp angle on it that has been applied to the multiple documents of this matter that are in question. I have attached the redacted version of the aforementioned affidavit that was used to commit fraud upon this Court as exhibit "A"

Exhibit A attached to the affidavit shows the actual size of Smith's notary seal and her

---

[5] This affidavit had been filed with the chancery clerk on April 25, 2023, in response to a subpoena duces tecum issued to Heather Smith. While this affidavit was discussed during Smith's testimony at the August 2023 hearing, it was not introduced into evidence until this later hearing.

12

signature from the document in the Forrest County case she referred to in the affidavit.

¶15. On September 13, 2024, the chancellor entered a "Final Judgment and Order Denying Motion to Set Aside." In this order, the chancellor found that no fraud was proved at the hands of Kenneth. The chancellor noted that Diane was having significant drug issues during the time the questioned documents were signed. The order concludes by stating:

> This Divorce cannot be attacked under Mississippi Rule of Civil Procedure 60, which was filed just short of six (6) month time-period, because there was no fraud proven at the hands of the Plaintiff. The Court simply does not have jurisdiction to set aside the Divorce because the proof does not meet the requirement of Mississippi Rule of Civil Procedure 60; the Defendant did not comply with Mississippi Rule of Civil Procedure 59; nor did the Defendant comply with Mississippi Rule Appellate Procedure 4.

Diane appeals the denial of her claim for relief.

## STANDARD OF REVIEW

¶16. In *Thompson v. Meyer*, 228 So. 3d 363, 365 (¶7) (Miss. Ct. App. 2017), this Court explained:

> "[M]otions for relief under Rule 60(b) are generally addressed to the sound discretion of the trial court and appellate review is limited to whether that discretion has been abused." *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984). "The appeal from a denial of a Rule 60(b) motion brings up for review only the order of denial itself and not the underlying judgment." *Stevens v. Wade*, 214 So. 3d 301, 304 (¶11) (Miss. Ct. App. 2017) (internal quotations omitted).

## ANALYSIS

¶17. Pursuant to Rule 60(b)(1), Diane filed a motion for relief from a judgment of divorce that had been entered less than six months earlier. She alleged that the judgment should be

13

set aside because it was obtained by "fraud, misrepresentation, and misconduct of the Plaintiff, Kenneth Merritt." After the hearings outlined above, the chancellor denied Diane's claim for relief after finding that she did not provide clear and convincing proof of fraud at the hands of Kenneth. She now argues that she provided sufficient proof and that the chancellor erred by failing to grant her relief.

¶18. To obtain relief from the judgment based upon a claim of fraud because her name was forged on the questioned documents, Diane had the burden to prove the documents were forged by clear and convincing evidence. *See St. Dominic Ambulatory Surgery Ctr. LLC v. Shaffer*, 329 So. 3d 509, 515 (¶14) (Miss. Ct. App. 2021) ("By definition, forgery is a form of fraud and must be proven by clear and convincing evidence." (citing *Cotton v. McConnell*, 435 So. 2d 683, 686 (Miss. 1983))). *Id.* ("Clear and convincing evidence is a high standard."). In *Frisby v. Warden*, 269 So. 3d 371 (Miss. Ct. App. 2018), this Court stated:

> Clear and convincing evidence has been defined as:
>
>> [T]hat weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct[,] and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.

*Id.* at 378 (¶20) (quoting *Moran v. Fairley*, 919 So. 2d 969, 975 (¶24) (Miss. Ct. App. 2005)). As to the general elements of fraud, the supreme court stated in *Trim v. Trim*, 33 So. 3d 471, 478 (¶19) (Miss. 2010):

> The elements of an intentional or fraudulent representation, which must be

14

proven by clear and convincing evidence, are:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*McCord v. Healthcare Recoveries Inc.*, 960 So. 2d 399, 406 (¶17) (Miss. 2007).

¶19.    We will address the evidence of each of these elements separately below.

*(1) Representation*

¶20.    The representations we refer to are that Diane signed each of the questioned documents before a notary public, Heather Smith. The representations were made on Kenneth's behalf by Peebles or persons in his office when the questioned documents were filed with the chancery clerk.

*(2) Falsity*

¶21.    Diane testified at both hearings that she did not sign the documents and did not authorize anyone to sign her name. Smith testified in person at the first hearing, and her affidavit was admitted into evidence during the second hearing. Smith swore that she did not sign the documents, affix her notary seal to the documents, or witness Diane sign the documents. Further, Smith pointed out that the notary seal on the questioned documents was substantially smaller than her actual seal. This was proof, in her opinion, that the seal and her signature had been copied and affixed to the questioned documents. She produced a copy of her seal and signature from a document she acknowledged in an unrelated case that was in

15

Peebles' office at the time the questioned documents were being executed. Kenneth testified at both hearings and did not challenge Diane's testimony that she did not sign the documents. Kenneth presented no other proof to contest the testimony of Diane or Smith, with one exception. At the second hearing, Nelson presented some evidence that Diane had been charged with drug possession on two occasions. However, the dates of those arrests were not contemporaneous with the dates the documents were executed. Nelson suggested that Diane had a drug problem and forgot she had signed the documents. However, such a suggestion was refuted by Smith's testimony that she did not witness Diane's signatures.

### (3) Materiality

¶22. It is clear that without Diane's agreement or consent, a divorce on the ground of irreconcilable differences could not have been granted by the court. Further, without Diane's signature on the PSA, the court would have had to conduct an evidentiary hearing before a final judgment could have been entered. *See* Miss. Code Ann. § 93-5-2 (Rev. 2021).

### (4) Speaker's Knowledge of its Falsity or Ignorance of its Truth

¶23. The speaker in this instance would be Kenneth, by and through Peebles or his office personnel who prepared and filed the documents. There was no proof offered to show how Peebles' office purported to obtain Diane's signature on the documents. Smith's testimony provided circumstantial evidence that someone in Peebles' office forged the documents. In any event, in *J.A. Fay & Egan Co. v. Louis Cohn & Bros.*, 158 Miss. 733, 130 So. 290, 292 (1930), the supreme court stated:

16

> Where goods are purchased on material representations of the seller, and not upon the purchaser's own judgment, and the representations are false, and induced the purchaser to make the bargain, the contract cannot stand, regardless of whether the seller had an actual fraudulent intent or not. **Putting it differently, if the seller makes material representations of fact without knowing whether they are true or false, this is fraud in law,** and the seller must make his statement good. *Hall v. Thompson*, 1 Smedes & M. 443 [(Miss. 1843)]; *Oswald v. McGehee*, 28 Miss. 340 [(1854)]; *Rimer v. Dugan*, 39 Miss. 483 [(1860)], *Lindsey v. Lindsey*, 34 Miss. 432 [(1857)]; *Alexander v. Meek*, 132 Miss. 298, 96 So. 101 [(1923)].

(Emphasis added). Peebles, on behalf of Kenneth, represented to the chancellor that Diane had agreed to and consented to the questioned documents. As to whether any particular person forged the documents, Kenneth stated the documents were filed, at a minimum, without knowing whether those representations were true. As noted above, that is fraud under the law.

*(5) His Intent that it Should Be Acted on by the*
*Hearer and in the Manner Reasonably Contemplated*

¶24.    The questioned documents were presented to the chancellor with the intent that they be accepted by the chancellor and that a judgment of divorce would be granted based upon the documents.

*(6) The Hearer's Ignorance of its Falsity,*
*(7) His Reliance on its Truth, (8) His Right to Rely Thereon*

¶25.    The proof of these elements is established by the fact that the chancellor granted a divorce on the ground of irreconcilable differences and incorporated the PSA into the judgment. Clearly, the chancellor would not have done so if he knew the documents were forged.

17

## (9) His Consequent and Proximate Injury

¶26.     In this case, a divorce was granted to the husband without the wife having been served with process, waiving process, or consenting to an irreconcilable differences divorce. She was not able to contest the distribution of marital assets or debts.

¶27.     In the chancery court, Kenneth presented no real challenge to Diane's claim that her signatures were forged. The suggestion that Diane was on drugs and forgot she signed the documents is not supported by the evidence. Kenneth's inability to challenge Diane and Smith's testimony is further supported by his failure to file an appellate brief. Pursuant to *Patrick v. Patrick*, 204 So. 3d 854, 857-58 (¶¶10-11) (Miss. Ct. App. 2016), we can take this failure as a confession of error. In this case, it is especially applicable where Kenneth's counsel requested three extensions of time to file a brief but ultimately failed to do so.

¶28.     We find that Diane proved by clear and convincing evidence that the divorce in this matter was procured by fraud and misrepresentations by Kenneth or his agents, Peebles, and his office. Therefore, we find that the chancellor abused his discretion by denying Diane the requested relief pursuant to Rule 60(b)(1). In fact, pursuant to Rule 60(b)(6), the chancellor had the inherent authority to set aside the judgment in this case based on a fraud upon the court. *See In re Est. of Dorris*, 428 So. 3d 441, 452 (¶32) (Miss. Ct. App. 2026). In *Doe v. Smith*, 200 So. 3d 1028, 1032-33 (¶14) (Miss. 2016), the supreme court stated:

> A fraud upon the court is an intentional misdeed that "vitiates a judgment" because "the court is misled and deceived" about the facts it relies upon when administering the law. *Trim*, 33 So. 3d at 477 (¶15) (quoting *Brown v. Wesson*, 114 Miss. 216, 74 So. 831, 834 (1917)). Rule 60(b)(6) gives judges broad

18

authority to set aside judgments entered, resulting from such fraud. *Trim*, 33 So. 3d at 475 (¶7) (citing M.R.C.P. 60(b)(6) and *Tirouda v. State*, 919 So. 2d 211, 214 (Miss. Ct. App. 2005)).

Here, by clear and convincing evidence, Diane proved that the court had been "misled and deceived" into entering its "Final Judgment of Divorce" through the filing of forged documents in an effort to obtain a divorce for Kenneth. It was not incumbent upon Diane to prove who forged the questioned documents. It was sufficient for Diane to prove that her name was forged upon the documents and that the chancellor relied upon the forged documents to enter its judgment. We find that she met this burden and that the chancellor erred by failing to set aside the judgment.

## CONCLUSION

¶29. Therefore, we reverse the "Final Judgment and Order Denying Motion to Set Aside" and render a judgment in favor of Diane. We remand this matter to the chancery court for the entry of an order setting aside the "Final Judgment of Divorce" entered on April 19, 2022.

¶30. **REVERSED, RENDERED, AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**

19